**Henry BROWN, Plaintiff,**

v.

**CITY OF CHICAGO, Defendant.**

No. 87 C 6906.

United States District Court,
N.D. Illinois, E.D.

March 24, 1989.

Thomas Peters, Chicago, Ill., for plaintiff.

Diane J. Larsen, Asst. Corp. Counsel, City of Chicago, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

Plaintiff Henry Brown filed a complaint, individually and on behalf of a class, alleging violations of 42 U.S.C. § 1983. This case is presently before the court on the Plaintiff's and Defendant City of Chicago's ("the City") Cross Motions for Summary Judgment. For the following reasons, Brown's motion is denied and the City's motion is granted.

## FACTS

On the afternoon of August 4, 1987, Calvin Lee was shot four times. While awaiting surgery, Lee identified Brown from a photo array as the man who ordered his assailant to shoot. Brown was also identified from a photo array by a man named Rice Gibson as being on the scene immediately prior to the shooting.

At approximately 6:25 p.m. that evening, following these two identifications, the police arrested Brown and took him into custody. While Brown was in custody, the police prepared an arrest report and took Brown's fingerprints and photograph. Although the courts were in session until after midnight that evening, Brown was not taken for his *Gerstein* probable cause hearing because his fingerprints had not cleared. The Chicago Police Department has a policy and practice of delaying an arrestee's first court appearance until after his fingerprints have cleared. An arrestee's fingerprints clear after they are compared with all other known samples and the arrestee is identified and his record shows no outstanding warrants for his arrest.

The plaintiff was taken for his *Gerstein* probable cause hearing the next day, August 5, 1988, at 11:00 a.m. However, the judge refused to hold the hearing because the officers had not filed formal charges against Brown. Thereafter, in accordance with another Chicago Police Department policy, the officers commenced the felony review process by notifying the Assistant State's Attorney of the case. This "Felony Review" process requires the State's Attorney to review the charges prior to the probable cause hearing. Here, the Assistant State's Attorney conducted some interviews before relaying the information on the case to the State's Attorney. Upon receiving this information, the State's Attorney decided not to approve the charges, and Brown was released at approximately 5:00 p.m. Immediately prior to his release, Brown filed a complaint against the City pursuant to 42 U.S.C. § 1983 claiming that he was improperly detained for an unreasonable amount of time.

On December 4, 1987, plaintiff filed an amended complaint under 42 U.S.C. § 1983 arising out of his arrest and detention for his alleged role in the shooting of Calvin Lee. Plaintiff's amended complaint is composed of two counts, each brought under the fourth and fourteenth amendments. Count I challenges the City's alleged poli-

cies of detaining all arrestees without a judicial determination of probable cause (1) until the arrestee's prints have cleared, and (2) in felony cases, until an Assistant State's Attorney has approved the charges. (See amended complaint, Count I, para. 12–16.) Count II is identical but is purportedly brought on behalf of a class. Plaintiff has sought class certification but it has not been granted.

Plaintiff filed a motion for summary judgment under Fed.R.Civ.P. 56(a) on April 13, 1988. In its motion, the plaintiff contends that the length of its confinement (approximately 24 hours) was unreasonable for two reasons. First, the plaintiff claims that the fingerprint clearing process is not a necessary administrative step, and thus, any delay due to this process was unreasonable and excessive. Second, the plaintiff complains that since review of his charges through the felony review process was not sought until 17 hours after plaintiff's arrest, the City detained plaintiff for more than a "brief period" necessary to perform "administrative steps incident to arrest." The City, in response, has filed a cross-motion for summary judgment under Fed.R.Civ.P. 56(b) because (1) plaintiff has suffered no actual damages, and (2) bringing a person arrested for a violent felony before a judge within 16½ hours for a probable cause hearing is reasonable.

## DISCUSSION

In *Gerstein v. Pugh*, the Supreme Court held that the Fourth Amendment permits the delay of a probable cause hearing for a "brief period" in order to take "administrative steps incident to arrest." 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975). The plaintiff first argues that the process of fingerprint clearance does not constitute an "administrative step incident to arrest." Therefore, according to the plaintiff, the delay in bringing the *Gerstein* probable cause hearing was excessive and in violation of 42 U.S.C. § 1983.

The defendant argues that detention of felony arrestees during fingerprint clearance is a necessary administrative step because it 1) establishes the positive identifi-

cation of the arrestee; 2) determines the proper level of the charge; 3) ascertains the presence of any outstanding warrants or stop orders; and 4) aids in evaluating the proper amount of bond and other conditions of pretrial release.

In response, plaintiff contends that without a judicial determination of probable cause, no charge will exist to upgrade and no bond will be necessary. The plaintiff further maintains that even if an arrestee is not present when his fingerprints clear because no probable cause existed for arrest, the police may still positively identify the arrestee and record this arrest along with any prior arrests on the proper rap sheet. Finally, the plaintiff argues that the clearance policy violates the Fourth Amendment because it allows the police to detain the arrestee while they investigate the arrestee's prior record without having reasonable suspicion that any outstanding warrant or stop order exists. In support of this proposition, plaintiff relies on *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969), *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), and *Hayes v. Florida*, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). Nevertheless, this court finds these cases inapposite because in each case the accused was arrested without probable cause, unlike Brown who was arrested based on probable cause.

■ Although plaintiff's response has some merit, the court is not convinced that the fingerprint clearance policy is not a necessary administrative step and that it causes unwarranted and excessive periods of detention. The court must strike a delicate balance between the interests of the state in its duty to protect society and the interests of the individual in his freedom of movement. In considering all the factors on both sides, the court is particularly influenced by the fact that Chicago has a high crime rate. In addition, the plaintiff is a felony, as opposed to a misdemeanor, arrestee. This court believes that a felony arrestee has an increased chance of having additional warrants out for his arrest. We hold that in the case of a felony arrestee,

the positive identity and prior record of the arrestee are legitimate police concerns. Thus, the fingerprint clearance process is justifiable.

In further support of this conclusion, we rely on this court's opinion in *Doulin v. City of Chicago,* 662 F.Supp. 318 (N.D.Ill. 1986). The *Doulin* Court addressed the issue of whether the fingerprint clearance process was constitutional under *Gerstein* as applied to misdemeanor arrestees. The defendant set forth the very same arguments presented here, and the court found that the fingerprint clearance policy was not a necessary administrative step in the case of misdemeanor arrestees. However, in choosing to limit its holding purely to misdemeanor arrestees, the court held:

> [I]n fact there is a distinction between felony and misdemeanor offenses which the Supreme Court has recognized in Fourth Amendment cases:
>
>> Particularly in the context of felonies or crimes involving a threat to public safety, it is in the public interest that the crime be solved and the suspect detained as promptly as possible. The law enforcement interests at stake in these circumstances outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes.
>
> *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 681, 83 L.Ed.2d 604 (1985).

*Doulin,* 662 F.Supp. at 335–36.

We also believe that a distinction exists between misdemeanor and felony arrestees. When a person has committed a felony, society is well served by a law enforcement procedure which identifies a wanted criminal who uses false aliases upon arrest and confirms his prior criminal record. Accordingly, the benefit gained through the clearance process makes it a necessary administrative step, and any delay caused by this process is reasonable.

█ The plaintiff next argues that summary judgment should be granted in its favor because the City improperly waited for approximately 17 hours before having the charges reviewed by the State's Attorney. The plaintiff does not take issue with the policy of felony review itself but complains because the defendant delayed in notifying the State's Attorney of the charges. This court does not believe that the City's actions were unreasonable or the cause of unnecessary delay.

On the facts of this particular case, it cannot be said that it was reasonably necessary to commence the felony review process at an earlier time. The facts show that after Brown was arrested on August 4, 1987, at approximately 6:30 p.m., the responsible officers continually investigated the facts surrounding the crime both prior to contacting the Assistant State's Attorney and afterwards. In particular, Detectives Switski and Jones interviewed Brown at length some time shortly after 8:00 p.m. on August 14, 1987. Following this interview, the detectives next interviewed Officer Jackson by telephone and, thereafter, a citizen named Fred Johnson, both of whom related facts surrounding the shooting. In addition, Johnson was shown a photo array from which he identified Timothy Turner as being present during this altercation. After speaking with Johnson the detectives attempted to interview Calvin Lee and an eye-witness, Terry Smith, but both were unavailable. Detective Jones then completed his report of the Calvin Lee case at 2:00 a.m. on August 15, 1987.

Detective Perry came on duty at 8:30 a.m. on August 5, 1987 and reviewed the report of the Lee case. The report showed that no charges had been brought against Brown yet, pending reinterview of Lee and the location of a witness, Terry Smith. At 10:00 a.m., Brown was signed out of the lock-up, and at 11:00 a.m., Brown was taken before Judge M. Bolan for his probable cause hearing. After Judge Bolan refused to hear the matter, Brown was transferred to Area 4.

Detective Perry also returned to Area 4 at approximately 12:00 p.m. to find witnesses Rice Gibson and Terry Smith waiting for her. She, then, separately interviewed both Gibson and Smith. Subsequently, at approximately 1:30 p.m., Perry contacted

the Felony Review Unit of the State's Attorney's Office to seek approval of the charges against Brown.

Assistant State's Attorney R. Stevens arrived at Area 4 at approximately 2:30 p.m. Perry relayed the facts of the case to Stevens, and he also read the reports. Thereafter, Perry, Stevens and another detective went to Cook County Hospital where Stevens interviewed Lee. After this interview, he and the detectives returned to Area 4 where Stevens interviewed Brown, Gibson and Smith. After completing these interviews, Stevens contacted his supervisor and relayed the details to him. During this conversation it was determined that charges would not be brought against Brown. At approximately 5:00 p.m., Brown was released.

It is apparent from these facts, which display the continuous investigatory efforts of the Chicago Police Department, that the City did not unreasonably delay the commencement of the felony review process. Although not judicially determined, Brown's arrest was based upon probable cause and thus, the police had a right to hold Brown for a brief period without constitutional challenge. The plaintiff may correctly argue that it would have been more reasonable to initiate the felony review process at an earlier time, but the actions of the authorities as presented here are also reasonable.

Based on the foregoing analysis, the plaintiff's Motion for Summary Judgment as to Count I is denied. In addition, summary judgment cannot be entered in favor of the class for two reasons. First, both the fingerprint clearance and felony review processes are necessary administrative steps and, therefore, an arrestee may properly be detained for these purposes. Second, in light of the constitutionality of the fingerprint clearing process and the felony review process, the court must determine on a case by case basis whether detentions for other reasons are appropriate. Consequently, plaintiff's Motion for Summary Judgment in Count II is also denied. The City's Motion for Summary Judgment is granted.